**Opinion issued August 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00146-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**SEAN MICHAEL MCGUIRE, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 10-DCR-055898**

---

## O P I N I O N

Sean Michael McGuire is charged with felony murder for the death of a motorcyclist McGuire struck while allegedly intoxicated. McGuire moved to suppress evidence obtained after his arrest, arguing that his warrantless arrest was unlawful. The State argued that Article 14.03(a)(1) of the Code of Criminal

Procedure authorized McGuire's warrantless arrest because McGuire was found in a suspicious place. TEX. CODE CRIM. PROC. art. 14.03(a)(1). The trial court granted McGuire's motion to suppress, and the State appealed. *See* TEX. CODE CRIM. PROC. art. 44.01(a)(5) (permitting State an interlocutory appeal of an order granting a criminal defendant's motion to suppress evidence).

Because the Court of Criminal Appeals has interpreted Article 14.03(a)(1) to require the State to show exigent circumstances[1] to arrest without a warrant under Article 14.03(a)(1) and the State did not, we affirm. *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005); *Gallups v. State*, 151 S.W.3d 196, 202 (Tex. Crim. App. 2004); *Minassian v. State*, 490 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (describing *Swain* as holding that "warrantless arrest under [Article] 14.03(a)(1) requires showing of exigent circumstances"); *cf. Bell v. State*, No. 02-17-00299-CR, 2019 WL 3024481, at *2–3 (Tex. App.—Fort Worth July 11,

---

[1]    Black's Law Dictionary defines exigent circumstances as follows:

> **Circumstance** . . .
> – **exigent circumstances** (1906) 1. A situation that demands unusual or immediate action and that may allow people to circumvent usual procedures, as when a neighbor breaks through a window of a burning house to save someone inside. 2. A situation in which a police officer must take immediate action to effectively make an arrest, search, or seizure for which probable cause exists, and thus may do so without first obtaining a warrant. • Exigent circumstances may exist if (1) a person's life or safety is threatened, (2) a suspect's escape is imminent, or (3) evidence is about to be removed or destroyed.

*Circumstance*, BLACK'S LAW DICTIONARY (10th ed. 2014).

2019) (mem. op., not designated for publication) (noting *Swain* exigency requirement and numerous intermediate appellate court opinions applying *Swain* to require proof of exigency when State relies on Article 14.03(a)(1)'s suspicious-place exception).

## Background

Late one evening, Sean Michael McGuire was driving home when his truck struck a motorcycle driven by David Stidman. McGuire made a U-turn and pulled into the parking area of a nearby Shell gas station. McGuire called his mother and two people he knew in law enforcement. After calling them, McGuire waited at the gas station.

Meanwhile, the police were investigating the discovery of a motorcycle and dead motorist. During their investigation, the police were told that McGuire was waiting at the Shell gas station. They went to the gas station. At least one officer who spoke with McGuire suspected he had been driving while intoxicated.

The police drove McGuire to the location of Stidman's body. There, McGuire was arrested. He was taken to a local hospital where a warrantless, nonconsensual blood draw was performed to determine his blood-alcohol content.

McGuire was charged with felony murder on the basis that he was driving while intoxicated, he had two prior out-of-state DWIs, and those DWIs elevated this

offense to a first-degree felony. *See* TEX. PENAL CODE §§ 19.02(b)(3) (felony murder), 49.09(b)(2) (enhancing DWI to felony).

McGuire moved to suppress evidence on the argument that his warrantless arrest and warrantless search were unlawful. Among his arguments, he contended that the warrantless blood draw was an unlawful search in violation of the Fourth Amendment. His motion to suppress was denied. He was convicted of murder and appealed. This Court reversed his conviction, holding that the warrantless, nonconsensual blood draw violated McGuire's Fourth Amendment right to be free from unreasonable searches as recognized in *Missouri v. McNeely*, 569 U.S. 141 (2013). *See McGuire v. State*, 493 S.W.3d 177, 199 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see also id.* at 202 (stating, "All remaining issues raised in McGuire's appeal of the murder conviction are moot."). The case was remanded and set for retrial in 2018.

In advance of retrial, McGuire filed another motion to suppress evidence.[2] He argued that his warrantless arrest was unlawful and did not fit within any of the

---

[2] A ruling on a motion to suppress evidence is interlocutory and may be subject to reconsideration and revision on remand. *See Clement v. State*, 530 S.W.3d 154, 160 (Tex. App.—Eastland 2015) (stating that "a pretrial motion to suppress evidence is 'nothing more than a specialized objection to the admissibility of that evidence' that is interlocutory in nature . . . [and] may be the subject of reconsideration and revision as is any other ruling on the admissibility of evidence . . . [therefore,] the State will not be precluded from seeking a reconsideration of the suppression on a more fully developed record upon the remand of this case to the trial court."), *rev'd on other grounds*, PD-0681-15, 2016 WL 4938246 (Tex. Crim. App. Sept. 14, 2016) (not designated for publication). This Court did not review the trial court's 2012

Chapter 14 exceptions to the warrant requirement. *See* TEX. CODE CRIM. PROC. art. 14.01–.06. In the State's written response and at the suppression hearing, the State argued that the arrest fell within the suspicious-place warrant exception under Article 14.03(a)(1), but the State did not note the exigency requirement, point to any evidence that might satisfy the exigency requirement, or argue that a per se exigency exists.

The trial court—with a different trial judge than the one who presided over the first trial—did not receive any new evidence at the 2018 suppression hearing. Instead, the court reviewed the 2012 suppression-hearing transcript, the 2016 trial testimony, and the parties' pleadings. After considering these materials and the parties' motion and response, the trial court granted McGuire's motion to suppress, and the State appealed.

### Standard of Review

Appellate courts review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. 2019).

---

suppression ruling based on whether the warrantless *arrest* was legally permissible, only whether the warrantless *search* was permissible. *See McGuire*, 493 S.W.3d at 202. Thus, there was no bar to reconsideration of the warrantless-arrest suppression issue on remand at the 2018 suppression hearing; nor has law of the case been established on the warrantless arrest issue because this Court did not rule on that issue. *See State v. Swearingen*, 424 S.W.3d 32, 36 (Tex. Crim. App. 2014) ("The 'law of the case' doctrine provides that an *appellate court's* resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue.") (emphasis added).

Under the bifurcated standard, the trial court is given almost complete deference in its determination of historical facts, especially if based on an assessment of demeanor and credibility, and the same deference is afforded the trial court for its rulings on application of law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of demeanor and credibility. *Id.* However, for mixed questions of law and fact that do not fall within that category, the reviewing court may conduct a de novo review. *Id.* Our review of questions of law is de novo. *Id.*

We will sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). This is so even if the trial judge gives the wrong reason for its decision. *Id.*; *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000); *State v. Brabson*, 899 S.W.2d 741, 745–46 (Tex. App.—Dallas 1995), *aff'd*, 976 S.W.2d 182 (Tex. Crim. App. 1998) (stating that, in context of reviewing trial court order granting motion to suppress "we cannot limit our review of the [trial] court's ruling to the ground upon which it relied. We must review the record to determine if there is any valid basis upon which to affirm the county criminal court's ruling").

## Article 14.03(a)(1) and the Necessary Showing of Exigency

Warrantless arrests in Texas are authorized only in limited circumstances. *Swain*, 181 S.W.3d at 366. Once a defendant has established that an arrest has occurred and that no warrant was obtained, the burden shifts to the State to show that the arrest was within an exception to the warrant requirement. *Covarrubia v. State*, 902 S.W.2d 549, 553 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *Holland v. State*, 788 S.W.2d 112, 113 (Tex. App.—Dallas 1990, pet. ref'd). Most of the exceptions to the warrant requirement are found in Chapter 14 of the Code of Criminal Procedure. *See Swain*, 181 S.W.3d at 366; TEX. CODE CRIM. PROC. art. 14.01–.06 (delineating those circumstances in which warrantless arrests are permissible). The validity of a warrantless arrest can only be decided by the specific factual situation in each individual case. *Holland*, 788 S.W.2d at 113.

The exception relied on by the State in this appeal is found in Article 14.03(a)(1), which provides:

> Any peace officer may arrest, without warrant . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . breach of the peace, or [various other listed offenses] . . . or are about to commit some offense against the laws[.]

TEX. CODE CRIM. PROC. art. 14.03(a)(1).

The Court of Criminal Appeals has held that, when relying on Article 14.03(a)(1), the State must establish that (1) probable cause existed, (2) the person

was found in a suspicious place, and (3) "exigent circumstances call for immediate action or detention by police." *Swain*, 181 S.W.3d at 366 (concluding that exigent circumstances were established on evidence that person arrested had just admitted to leaving injured woman in secluded area after beating her during robbery, police perceived urgent need to find woman before she died from her injuries, and held additional concern that person who had admitted his involvement might flee); *Gallups*, 151 S.W.3d at 202; *cf. Dyar v. State*, 125 S.W.3d 460, 470–71 & n.13 (Cochran, J., concurring) (stating that "if there are no exigent circumstances that call for immediate action or detention by the police, article 14.03(a)(1) cannot be used to justify a warrantless arrest") (citing Gerald S. Reamey, *Arrests in Texas's "Suspicious Places": A Rule in Search of Reason*, 31 TEX. TECH L. REV. 931, 967–77, 980 (2000)).

At least five intermediate courts—including this one—have noted the State's burden to establish exigent circumstances when relying on Article 14.03(a)(1). *See, e.g.*, *Minassian v. State*, 490 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (describing *Swain* as holding that "warrantless arrest under Section 14.03(a)(1) requires showing of exigent circumstances" and concluding that risk of destruction of computer-data evidence on laptops established exigency); *Polly v. State*, 533 S.W.3d 439, 443 & n.4 (Tex. App.—San Antonio 2016, no pet.) (relying on *Swain* for proposition that exigency must be established for warrantless arrest

8

under Article 14.03(a)(1)); *see also Cook v. State*, 509 S.W.3d 591, 603–04 (Tex. App.—Fort Worth 2016, no pet.); *LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *State v. Morales*, No. 08-09-00137-CR, 2010 WL 819126, at *2 (Tex. App.—El Paso Mar. 10, 2010, no pet.) (mem. op., not designated for publication).

There are several pre-2013 appellate court cases in which Texas intermediate appellate courts have held that the natural dissipation of alcohol in a suspect's blood provides an exigency under Article 14.03(a)(1) in that dissipation destroys evidence of a DWI offense. *See, e.g.*, *Gallups*, 151 S.W.3d at 202 (stating that "need to ascertain appellant's blood-alcohol level" was exigent circumstance); *Winter v. State*, 902 S.W.2d 571, 575–76 (Tex. App.—Houston [1st Dist.] 1995, no pet.); *Morales*, 2010 WL 819126, at *2; *State v. Wrenn*, No. 05-08-01114-CR, 2009 WL 1942183, at *3 (Tex. App.—Dallas July 8, 2009, no pet.) (mem. op., not designated for publication).

In 2013, the United States Supreme Court ruled that the dissipation of alcohol does not provide a per se exigency to relieve the State of the requirement of a search warrant when conducting an unconsented-to blood draw of a DWI suspect. *McNeely*, 569 U.S. at 155. Since *McNeely*, at least one intermediate appellate court has held that the dissipation of alcohol does not, without more, meet Article 14.03(a)(1)'s exigency requirement either. *State v. Donohoo*, No. 04-15-00291-CR, 2016 WL

9

3442258, at *6 (Tex. App.—San Antonio June 22, 2016, no pet.) (mem. op., not designated for publication) (stating that "*McNeely* forecloses the State's position" that "exigent circumstances called for Donohoo's immediate arrest" on its singular argument that it needed to obtain his blood-alcohol level before the natural dissipation of alcohol); *see also Bell*, 2019 WL 3024481, at *2 n.2 (citing *McNeely* in discussion of exigency justifying arrest); *but see Dansby v. State*, 530 S.W.3d 213, 222 (Tex. App.—Tyler 2017, pet. ref'd) (relying on *Gallups*, and without citation to *McNeely* or discussion of any case-specific facts influencing ability to timely obtain warrant, holding that "exigent circumstances—the need to ascertain Appellant's alcohol concentration—existed to justify Appellant's immediate arrest" under Article 14.03(a)(1)); *Lewis v. State*, 412 S.W.3d 794, 802 (Tex. App.—Amarillo 2013, no pet.) (without citing *McNeely* or discussing any case-specific facts influencing ability to timely obtain warrant, holding that officer "needed to take prompt action to ascertain appellant's blood-alcohol level" and exigency existed to support warrantless arrest under Article 14.03(a)(1)).

Here, the State does not argue that the dissipation of alcohol provided the necessary exigency, either per se or based on the particular facts of McGuire's arrest. In fact, the State's position is that no exigency requirement exists at all. At oral argument, the State explained that it reads *Minassian* to say that no exigency is required under Article 14.03(a)(1). But the State misreads the case's holding. This

10

Court stated, in *Minassian*, that proof of exigency circumstances is not required "to pass constitutional muster" in the context of a warrantless felony arrest made in a public place but that more had to be considered to review the lawfulness of the arrest at issue because Article 14.03(a)(1) additionally "requires exigent circumstances to make a warrantless arrest premised on suspicious activity in a suspicious place." 490 S.W.3d at 639 (citing *Swain*, 181 S.W.3d at 366). Proof of exigent circumstances is required when the State relies on Article 14.03(a)(1) to justify a warrantless arrest. *Id.*

The State had the burden at the 2018 suppression hearing to establish exigent circumstances to permit the warrantless arrest of McGuire, but it did not.

**The State Made No Showing of Exigency;**
**Therefore, the Trial Court Did Not Err in Granting Motion to Suppress**

In its appellate brief, the State presents three arguments why the trial court erred in granting McGuire's suppression motion; however, the State fails to point to any evidence of exigent circumstances. This is consistent with the State's presentation of the issues to the trial court. Neither the State's response to McGuire's motion to suppress nor its arguments at the suppression hearing addressed exigency.

This failure of evidence provided a basis for the trial court to grant McGuire's motion to suppress. On appeal of the grant of a motion to suppress, "[w]e must review the record to determine if there is any valid basis upon which to affirm the [trial] court's ruling." *Brabson*, 899 S.W.2d at 745–46. Because the State did not

11

meet its evidentiary burden to bring McGuire's arrest within the sole warrant exception on which it relied, we must affirm the trial court's order granting the motion to suppress. The dissent's approach fails to hold the State to its evidentiary burden or follow this well-established standard of review.

Even if the State had sought to meet its burden to establish an exigency, there is no basis on which the trial court could have found a per se or case-specific exigency on this record. The State could not rely on McGuire's alleged intoxication to argue a per se exigency because, after *McNeely*, there is no per se exigency for dissipation of alcohol in a suspect's blood. 569 U.S. at 164; *see Donohoo*, 2016 WL 3442258, at *6 (relying on *McNeely* to reject State's argument for warrantless arrest under Article 14.03(a)(1) based on dissipation of suspect's blood-alcohol level, given that officers had testified they never sought warrant); *see also Bell*, 2019 WL 3024481, at *2 n.2 (in connection with holding that, under *Swain*, exigent circumstances must be shown, noting that the United States Supreme Court held, in *McNeely*, that "the natural metabolization of alcohol in the bloodstream does not present a *per se* exigency but must be determined on a case-by-case basis on the totality of the circumstances.").

Neither do the case-specific facts establish an exigency to successfully challenge the suppression order. McGuire called his mother from the Shell gas station before he interacted with any police officers, and she drove to the gas station

to wait with him. She was available to drive him, should he have been allowed to leave, which meant there was no danger of subsequent driving while intoxicated. *Cf. York v. State*, 342 S.W.3d 528, 536–37 (Tex. Crim. App. 2011) (evidence of defendant's running vehicle warranted reasonable belief that, if defendant were intoxicated, he would eventually endanger himself and others when he drove vehicle home). Moreover, McGuire waited at the gas station for law enforcement to arrive and agreed to ride with the officers to the location where Stidman's body was located. There was no evidence that, after the police engaged McGuire, they held any concern that McGuire would attempt to flee. *Cf. Villalobos v. State*, No. 14-16-00593-CR, 2018 WL 2307740, at *6 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that Article 14.03(a)(1) requirements were met on evidence driver "needed to be detained because he had fled scene of accident").

Without any evidence or argument that an exigency existed, we must conclude that the State failed to meet its burden to establish that McGuire's warrantless arrest was authorized under Article 14.03(a)(1), on which the State relied. *See Brabson*, 899 S.W.2d at 745–46; *cf. Buchanan v. State*, 175 S.W.3d 868, 876 (Tex. App.—Texarkana 2005) (concluding that State failed to establish exigent circumstances to support warrantless arrest under Article 14.03(a)(1) because there was no evidence suspect was going to escape or that urgency existed, and stating, "We cannot

13

interpret Article 14.03(a)(1) to be so encompassing that it swallows the general rule that a valid arrest should be based on an arrest warrant."), *rev'd on waiver grounds*, 207 S.W.3d 772 (Tex. Crim. App. 2006).

Accordingly, we conclude that the trial court did not err in granting McGuire's motion to suppress. *See Laney*, 117 S.W.3d at 857 (stating that ruling on motion to suppress must be upheld if legally correct even if trial court did not present same basis in its ruling). In light of our holding, we do not reach any other issues raised in the State's brief.

### Response to Dissent

The dissent addresses three issues that require a response: whether Article 14.03 requires a showing of exigency, whose burden it is to make that showing, and whether certain facts or circumstances satisfy that burden under a per se or fact-specific analysis.

### A.     Article 14.03 requires a showing of exigency

The dissent presents the current state of law on exigency in the context of a warrantless arrest as though a turn of phrase has been frivolously used and then given unintended weight. *Dissenting Op.* at \*10 (after determining that "courts have implied an exigency requirement from a sentence in" *Swain v. State*, openly doubting whether Texas law actually does "require exigent circumstances in all cases under article 14.03(a)(1)"). But there can be no question that Texas law requires a showing

14

of exigency when relying on this warrant exception. The Court of Criminal Appeals has expressly stated—twice—that a showing of exigency is part of the proof necessary under Article 14.03(a)(1). *See Gallups*, 151 S.W.3d at 202; *Swain*, 181 S.W.3d at 366–67. Both opinions show the deliberative basis for the statement of law, citing to a 2003 concurrence in another Court of Criminal Appeals opinion, *Dyar*, 125 S.W.3d at 468–71 (Cochran, J., concurring).

The *Dyar* concurrence discussed the historical context of Article 14.03(a)(1) and the ill fit between the terms of the 150-year-old statute and modern Fourth Amendment search-and-seizure law. *Id.* The provision now found in Article 14.03, when implemented, sanctioned the arrest of "suspicious people" who "might soon commit" breaches of the peace such as "drunks in the bar" who "had not yet breached the peace" but seemed like they might. *Id.* at 469. Officials relied on the law to "arrest, escort out of town, or generally hassle those who were not welcome." *Id.* at 470. The concurrence noted that application of the statute in such a manner "would not pass constitutional muster today" and would, instead, be considered "constitutionally offensive." *Id.* at 469–70.

The *Dyar* concurrence stated that courts might best harmonize the "original intent of the pre-Civil War statute" and "current constitutional" norms and protections by using "the organizational principle of exigent circumstances" to analyze when the requirements of Article 14.03 are satisfied. *Id.* at 470 (explaining

that an exigency-based analysis would "make some sense out of the 'suspicious places' language"); *see id.* at 470 n.13 (quoting Gerald S. Reamey's *Arrests in Texas's "Suspicious Places": A Rule in Search of Reason*, 31 Tex. Tech L.Rev. 931, 980 (2000)). [3]

The *Dyar* concurrence explained how an exigency framework would guide the Article 14.03 analysis while adhering to Fourth Amendment jurisprudence:

> [If] police have probable cause to believe that person "X" has committed a felony or breach of the peace and he is found in "Y" location under "suspicious circumstances" and there is no time to obtain a warrant because: 1) the person will not otherwise remain at "Y" location; 2) the evidence of the crime will otherwise disappear; or 3) the person poses a continuing present threat to others, then police may arrest "X" without a warrant. On the other hand, if there are no exigent circumstances that call for immediate action or detention by the police, article 14.03(a)(1) cannot be used to justify a warrantless arrest. . . . [T]his construction best adheres to the legitimate historical purpose and

---

[3]   An excerpt of the law review quote reads as follows:

Necessity is the guiding principle in interpreting warrant exceptions. Therefore, not every crime scene qualifies as a suspicious place excusing a warrant. The correct question in crime scene cases is not whether an offense was committed at the place where the suspect is found, but whether some reason exists not to obtain prior judicial approval for the arrest. A certain level of exigency usually accompanies the bringing together of a suspect, criminal evidence (which may be evanescent), and probable cause in the place where the offense occurred.

*Dyar*, 125 S.W.3d at 470 n.13 (Cochran, J., concurring) (quoting Gerald S. Reamey, *Arrests in Texas's "Suspicious Places": A Rule in Search of Reason*, 31 TEX. TECH L.REV. 931, 980 (2000)).

scope of the statute . . [and] also complies with Fourth Amendment jurisprudence.

*Id.* at 471.

The concurrence's framework was adopted by a majority of the Court of Criminal Appeals one year later in *Gallups*. 151 S.W.3d at 202 (citing the *Dyar* concurrence and requiring a showing that arrestee was in suspicious place and that exigent circumstances existed to justify immediate arrest under Article 14.03(a)(1)). The following year, the Court again expressly stated that Article 14.03(a)(1) requires a showing that exigent circumstances existed. *Swain*, 181 S.W.3d at 366–67 (majority opinion adopted by seven judges with two others concurring, citing *Dyar* concurrence and requiring showing of exigency). In light of this trio of Court of Criminal Appeals cases, there can be no doubt that binding precedent requires a showing of exigency when the State is relying on Article 14.03(a)(1). *See id*.; *Gallups*, 151 S.W.3d at 202.

The dissent remains doubtful, citing post-*Swain* cases that do not include an exigency analysis. *See Dissent Op.* at *10–11 & n.3. Four of those cases are readily distinguishable in that none involved the State arguing the Article 14.03(a)(1) exception in response to a motion to suppress. For example, in *Griffin v. State*, No. 03-15-00398-CR, 2017 WL 2229869 (Tex. App.—Austin May 19, 2017, pet. ref'd) (mem. op., not designated for publication), the appellate issue was a claim of ineffective assistance of counsel based on a failure to ever move to suppress

evidence. *Id.* at *5. The appellate court affirmed on that issue with alternative holdings: first, there was a strategic reason for counsel to not seek exclusion of the evidence, and, second, the evidence was not subject to exclusion because the arrestee had just assaulted a public official and was acting belligerently and aggressively to the arresting officer, thereby permitting a warrantless arrest under Article 14.03(a)(1). *Id.* at *6. True, the ineffective-assistance-of-counsel opinion did not discuss the exigency requirement. But, the opinion amply described the arrestee's agitated and aggressive state, which would have warranted a belief by the officer that an arrest was necessary to prevent physical harm, and the opinion cited approvingly other cases that did discuss the exigency requirement. *See id.* (citing *Dyar*, *Swain*, and *Cook v. State*, 509 S.W.3d 591, 604 (Tex. App.—Fort Worth 2016, no pet.)); *see also Dyar*, 125 S.W.3d at 471 (Cochran, J., concurring) (discussing what would constitute exigency in context of Article 14.03(a)(1)). Neither *Griffin* nor any other case cited in the dissenting opinion calls into question the Court of Criminal Appeals's direct statement of law that evidence of exigency is required under Article 14.03(a)(1).

## B.  The State has the burden to show an exigency

It is the State's burden, when arresting without a warrant, to prove that its actions fell within one of the statutory warrantless-arrest exceptions. *See Fry v. State*, 639 S.W.2d 463, 467 (Tex. Crim. App. 1982); *cf. Gutierrez v. State*, 221 S.W.3d

680, 685 (Tex. Crim. App. 2007) (in warrantless-search context, stating "the warrant requirement is not lightly set aside, and the State shoulders the burden to prove that an exception to the warrant requirement applies"). It is not the Court's role to scour the record for exigent or quasi-exigent circumstances. *See Fry*, 639 S.W.2d at 467 (rejecting argument that testimony supported finding of exigency for warrantless arrest because testimony was "ambiguous at best" and, therefore, did not meet State's burden). When the State argues only one warrant exception, yet fails to meet the evidentiary burden to establish that exception, and the trial court grants the motion to suppress, this Court is bound to affirm the trial court's grant of a motion to suppress. *See Brabson*, 899 S.W.2d at 745–46 ("We must review the record to determine if there is any valid basis upon which to affirm the [trial] court's ruling."); *Donohoo*, 2016 WL 3442258, at *6 (affirming trial court order granting motion to suppress because State failed to present evidence of exigency).

C. **Facts and circumstances identified in the dissent do not satisfy the State's burden under a per se or fact-specific analysis**

Without holding the State to its evidentiary burden, the dissent looks to the record and identifies three facts that, in the dissent's view, would suffice to show an exigency: (1) McGuire having "shown his willingness to flee," (2) a need to preserve evidence in the form of the motorcycle bumper lodged in McGuire's truck, and (3) McGuire's suspected intoxication. Even if a review of the record for exigency

19

were permitted without the State making any showing in support of its burden, none of the three arguments meets the threshold.

Fist, evidence that McGuire might have fled the scene if not arrested is ambiguous at best, and ambiguity in this context is resolved against the State. *Fry*, 639 S.W.2d at 467. Yes, this Court has held that legally sufficient evidence existed to support the jury's determination that McGuire failed to comply with the technical requirements of the stop-and-render-aid statute when he left the scene of impact and drove to the gas station. *See McGuire v. State*, 493 S.W.3d 177, 204–07 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd), *cert. denied* 137 S. Ct. 2188 (2017) (noting McGuire did not get out of his truck to determine whether an injured person might be near the known spot of impact or call emergency services; he, instead, went to a gas station and waited for police to come to him). But that evidence cannot reasonably be argued to suggest that McGuire was likely to flee from police. He went directly to a gas station, called police personnel, waited for police to come to him, and called his mother to bear witness to the entire episode. Once the police arrived, he voluntarily answered questions and left with them. Speculation that McGuire might have called his mother and the police to his location only to flee once they arrived does not show exigency. Moreover, had the State chosen to make this argument, itself, its most likely vehicle would have been Article 14.04, not

14.03, because Article 14.04 permits the warrantless arrest of suspected felons who are "about to escape." *See* TEX. CODE CRIM. PROC. art. 14.04.

Second, the police had more options than choosing to arrest McGuire or to allow the possible destruction of evidence on his truck: the State could have seized the truck. *See Dismukes v. State*, 919 S.W.2d 887, 893–94 (Tex. App.—Beaumont 1996, pet. ref'd) (with proper showing, including existence of probable cause, police may seize vehicle without warrant and hold the vehicle "for whatever period is necessary to obtain a warrant for the search," detached from any arrest).

Third, suspected intoxication and a related need to determine a suspect's blood-alcohol content no longer provide a per se exigency. *McNeely*, 569 U.S. at 141; *see McGuire*, 493 S.W.3d at 199. The dissent argues that *McNeely*'s no-per-se-exigency holding is limited to invasive searches to obtain a suspect's blood and does not apply to arrests. This position must be rejected in light of the rationale provided in *McNeely*, the broader protections provided by the Texas warrantless-arrest statute beyond federal constitutional protections, and the perverse results that would follow under the dissent's construction.

The dissent posits that the need to expeditiously draw a suspect's blood to determine its blood-alcohol content could supply a per se exigency to arrest a person without approaching the judiciary for an arrest warrant, even though, under *McNeely*, the police would not have automatic legal authority to then draw the

21

suspect's blood without approaching that same judicial actor for a search warrant (or establishing case-specific exigency). If an articulated need does not automatically excuse the State from approaching the judiciary to obtain a search warrant, as *McNeely* holds, it cannot follow that the same need would automatically excuse the State from approaching the judiciary for an arrest warrant, given that the State would be required to approach the judiciary anyway, in the interim as it held the suspect in custody.

The State should not be permitted to invoke a particular assertion of exigency to invariably allow a predicate step to a desired law-enforcement activity when the United States Supreme Court has explicitly prohibited that same exigency from per se authorizing the desired activity. *Cf. State v. Villarreal*, 475 S.W.3d 784, 808 (Tex. Crim. App. 2014) (rejecting State's argument that dissipation of alcohol can provide per se exigency for search incident to arrest when it cannot supply per se exigency for search, itself, under *McNeely*).

The incongruence of recognizing a per se exigency for a predicate step when it cannot authorize the actual police activity that is the focus of the encounter cannot be explained away under a theory that the sanctity of one's freedom from searches and from arrests are markedly different in a constitutional sense. *See Dissent Op.* at *16–17. The requirement of a search warrant and the requirement of an arrest warrant do not derive from distinct areas of law with different standards or concepts

22

of exigency—they both derive from the Fourth Amendment. As the United States Supreme Court has affirmed, the principles in the Fourth Amendment "apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life." *Boyd v. United States*, 116 U.S. 616, 630 (1886); *see Crane v. State*, 786 S.W.2d 338, 346 (Tex. Crim. App. 1990) ("In order for a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time the arrest or search was made and the existence of circumstances which made the procuring of a warrant impracticable."). If dissipating blood-alcohol levels are not considered a per se exigency in the search context, they are not a per se exigency to justify a warrantless arrest for the purpose of conducting a search. To treat arrests differently than searches in this context would allow the government to subvert *McNeely*. It also would obviate the extra protection the Article 14.03(a)(1) exigent-circumstances requirement affords the public against unreasonable governmental intrusion beyond Fourth Amendment protections.

### Conclusion

We affirm the trial court's order granting McGuire's motion to suppress.


Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.

23

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.2(b).